May it please the Court. My name is Matt Kochenauer. I'm an Assistant Attorney General for the State of Montana. I'm here today representing the appellants and the defendants. The Court and Edelman looked at Montana's contribution limits for individuals and for PACs and determined that candidates could amass the resources that they need to engage in effective advocacy. Rather than following Edelman, the District Court looked to a non-binding plurality decision and determined that the same statute was unconstitutional. And Montana's here today asking this Court to reverse for three reasons. First, the District Court should have followed the law of the circuit in Edelman rather than Randall. Secondly, even if the Randall factors were to be applied here, Montana's statute should be upheld. And finally, the Montana's contribution limits for political parties should be upheld. So, why should we even consider the argument in view of Judge Bivey's opinion in the published decision granting the stay? Well, Your Honor, the motion's channel certainly is a court of deference. It's not binding on this Court, but for the reason... Why isn't it binding on this Court? It's a published opinion by a three-judge panel under Miller v. Gamey. It is binding on this Court. Have you considered that? Your Honor, I... I mean, it's a winner for you. It absolutely is, and I'd be happy to... If that's the law, I'll take it. The research that I found found that motion's panels were only entitled to deference, but as a published opinion... When it's a published opinion of a three-judge panel. Then I'll turn to my second argument. When we're under the Randall factors, Montana's limits are very, very different than Vermont's. Montana's limits across the board, and Vermont's were the limits that were at issue in Randall. As I understood Judge Bivey's opinion, he said that Randall was not binding precedent on the Court because it was a plurality opinion. Now, we can't deviate from that unless we get eight more judges up here in an in-bank panel, as I understand it. Why don't you go to the other issue, whether Citizens United was improperly applied? Well, I think that when we're getting to that point, we're looking at what effect, if any, did McCutcheon have on this case? I think because McCutcheon is the logical extension to Citizens United when we're talking about particularly corruption. Obviously, this case has stayed for a very long time waiting for McCutcheon to come down. McCutcheon should have no effect on this Court's analysis other than to support affirming Montana's limits. McCutcheon in talking about corruption did not undercut the corruption interests that were presented in Edelman. The Supreme Court continues to recognize corruption and the appearance of corruption as being legitimate interests. The threat from politicians too compliant with the wishes of large contributors was what Edelman said was a compelling governmental interest. As I understand it, Citizens United said that the only admissible compelling evidence, compelling interest, was quid pro quo corruption. So this wasn't considered by the District Court. The District Court assumed the compelling and went to the closely drawn factors. But my question is, shouldn't we remand this to the District Court to consider the first element, that is, whether the compelling governmental interest or important state interest which is considered, which was threat from politicians too compliant with the wishes of large contributions has been abrogated by Citizens United and they should consider whether the Montana limitations prevent quid pro quo corruption? No Your Honor. I think this Court can decide. And the reason is because of the way that McCutcheon treated the definition of corruption and quid pro quo. So McCutcheon changed quid pro quo from Citizens United? I think that McCutcheon clarified that quid pro quo is not limited to instances of bribery. Quid pro quo includes sums of money that are given to influence the office holder's actions and duties. Clearly we're not talking about mere influence or access. We're talking about something that's less than bribery and something that's more than mere influence. In Edelman, the evidence that was presented by Montana meets that. There was evidence that candidates were, there was money that was funneled to candidates before a vote came out. Even so, shouldn't it be remanded to consider whether the compelling governmental interest which the Court used, which was threat from politicians too compliant with the wishes of large contributors, should be analyzed under a combination of Citizens United and McCutcheon as to what quid pro quo corruption was a compelling governmental interest? I just, I think that there's evidence here of quid pro quo corruption that has already been presented to establish that. But the District Court never made a finding on that. Shouldn't it be allowed to make a finding first? Well, Your Honor, if that's where this case were to go, that would, then obviously we would put on the evidence. But my point is simply that I believe that that evidence was presented and that the evidence that was presented was evidence of quid pro quo corruption. Was the evidence presented so strong that it was a matter of law that the judge couldn't find otherwise? Yes, I believe it was. Tell me what that evidence was. Well, first we have the evidence that was presented in Edelman where we're talking about money getting results. We're not talking about money getting access or money getting influence. We're talking about money getting results. We also have testimony in this trial and contrary to the representations in the appellee's brief, Mary Baker did not testify that a $1,000 contribution was not corrupting. She testified that a $1,000 contribution would certainly have the appearance of corruption. And here they were talking about selling votes. So they were talking about, even on a narrow understanding of what quid pro quo corruption is. And that's at the second volume of the transcript at page 209. $1,000 would certainly create the appearance of corruption. The fact that she didn't know of any candidates who had actually sold a vote. And I think that the other issue that McCutcheon brings up is circumvention. And McCutcheon's analysis of circumvention also supports Montana's limits. McCutcheon was clearly concerned about prophylaxis on prophylaxis. And there of course you're dealing with base limits in addition to aggregate limits, in addition to limits on how much a donor can give to a party, limits on how much a donor can give to a PAC, then back limits coming back on how much a PAC or a party can give to the candidate. McCutcheon properly recognized things have changed since Buckley. While in Montana, things really haven't changed. We have a very similar landscape to what was going on 40 years ago. There are no limits on how much a donor can give to a political party or how much a donor can give to a PAC. And so where the court had a hard time seeing how somebody could use a political party and circumvent the individual limits in Montana, it's not that hard to see examples of that. For example, even in this last election cycle and the Rick Hill campaign as an intervener, in that campaign, shortly after Judge Lovell's order, Rick Hill's campaign got a $500,000 contribution from the Montana Republican Party. Now if that half a million dollars came from one particular donor, it's not divorced from reality to see how that could be being used as circumvention to get around. Did it come from one donor? I don't know where it came from, Your Honor. But it's not difficult to certainly imagine that that could be used to get around the individual limits. McCutcheon's concern with the limits, too, is very different than Montana's limits. Montana, we're talking about base limits. McCutcheon clearly accepted the constitutionality of base limits. Here we're talking about individuals and PACs with base limits. The aggregate party limit for Montana essentially functions as a base limit as well. And for purposes of contribution law, Montana treats political parties and their local committees as a single donor. And they can give as much up to the limit to as many candidates as they want. So there is no aggregate limit in the sense that there was in McCutcheon. So the circumvention interest is still a valid corruption interest under this Supreme Court's decision in Colorado, too. The Supreme Court and this Court have both recognized that parties can be used to circumvent the limits. That is still a sufficient government interest. One distinction that I do think the motions panel addressed but I think is relevant to this case as well is in the district court's order and looking at what... One of the elements in Randall was whether the limits treated individuals and political parties differently. Colorado, too, found that individuals and political parties should be treated equally. Aren't those two cases in tension? And doesn't Randall come after Colorado, too? Your Honor, it's certainly possible. I mean, we know that Randall is the first case that really treated parties as something that would require some preference. And this Court recognized that in Thalheimer and said it's a close call. Again, this goes back to what real binding authority is there in Randall. And I think at this point it's an unsettled question. Certainly, for purposes of this case, though, Montana does treat the political parties more preferentially than individuals, whether or not that's a constitutional requirement or not. It certainly is. Well, that's favorable to the limits as far as Randall's concerned. Absolutely. That's correct. So why are you citing Colorado, too? Because I think Colorado, too, establishes the circumvention interest and limits from parties to candidates. And I think that that is potentially at play here based on... Hasn't its equal treatment of individual contributors and political parties been abrogated by Randall? I don't know that it's been abrogated because, again, we leave to the Supreme Court the prerogative to overrule its own decisions, which it hasn't done. I see your point. But to the extent there's some tension there, I think both cases support Montana's position. So let me make sure I understand. Your position is, and you're arguing that because the district court incorrectly thought that Randall abrogated Edelman, that we should go ahead and review the evidence that was presented below in light of Edelman or even under Randall and find in your favor? Your Honor, our position is that under Edelman, Edelman controls the law of the circuit. And if there were going to be a trial, which there was obviously, but if there is a trial to try to show that that's no longer the case, the focus should have been on whether or not things have changed since Edelman. And clearly, the evidence showed that it had not. So under Edelman, it's an easy case. I know, but the district court didn't review under Edelman. He didn't make an alternative finding. So what do we do? I'm just trying to figure out what your position is. What do you want us to do? And Judge Baez asked a question. Shouldn't we send it back for the district court to review it in the first instance, especially if there's maybe more evidence presented in light of the fact that, you know, Citizens United, McCutcheon, all these, some of these other cases may have impacted Edelman. And your Honor, our position is simply that the plaintiffs bore the burden of overcoming Edelman. That was not reached to overcome that decision. But that still is the law of the circuit. Unless there was some sort of showing that things had changed, there's no interest in, there's no, Edelman still controls and it ends the case. I don't think it needs to be remanded. On the state interest though, Edelman says a state's interest in preventing corruption or the appearance of corruption is not confined to instances of bribery of public officials, but extends to the broader threat from politicians to compliant with the wishes of large contributors, citing Shrink, Missouri. You'd agree that Citizens United eliminated that second clause. Yes, Your Honor. Okay. So in that sense, where did, in the evaluation of Montana state interest, was it limited in either the Bybee opinion or anywhere? How was it applied to, where has Montana established by proof that it has an interest in quid pro quo and not an interest that is broader than that allowed by Citizens United? You're saying if it met quid pro quo, it doesn't matter if Edelman evaluated or validated it under a broader definition. That's correct, Your Honor. And our position is that Montana presented that evidence in the Edelman case, that that is evidence of quid pro quo corruption. How do we know that that's what Edelman only looked to the quid pro quo and didn't factor in that it didn't need to be tightly limited to quid pro quo? Because it has to be closely drawn to the state's interest. So how do you evaluate something as closely drawn if the justification set forth has been narrowed subsequently by Citizens United? Because, Your Honor, I think that the broader includes the narrower. Now it's been narrowed down. But we don't know whether Edelman validated under the broader said it was closely drawn if its intent in the state interest is to get the politicians to compliant. I think that's my concern. Right, Your Honor. And I see that I'm... We'll give you time, a minute for rebuttal. Think about that last question. Thank you, Your Honor. Mr. Bopp. Thank you. May it please the Court. My name is Jim Bopp. I represent the plaintiffs below. My colleague will take five minutes to address the aggregate political party limit. I will address the base contribution limits first. As to the import of the decision of the motions panel, even the motion panel itself explained that its decision does not bind this court, the merits panel. And furthermore, even if it did, we have an intervening decision in McCutcheon, which as has already been discussed, makes a dramatic change in the law following Citizens United, a dramatic change in the law in terms of the definition of corruption. So even the motions panel decision does not bind this court because of that change and the other changes... Could you please cite to me, Mr. Bopp, the portion of Judge Bybee's decision which you say tells us that he did not intend to bind a three-judge panel? I'm sorry. It's toward the end of his... I don't remember the specific page. It's toward the end of his decision where he points out that they were very careful in their analysis to make sure they did not express an opinion ultimately on the merits. But under the standards of granting or denying a stay, it's probability, not the final decision, that he was talking about probability, not a final merits decision. But he was analyzing the law and determining a question of law, was he not? Well, in some parts. In other parts, no. And, of course, we believe that some of the parts of the analysis of the law as it relates to the Randall decision were not correct. Also, the opinion, because McCutcheon hadn't been handed down, did not address... That's the second ground. Right, did not address that. If you're unable to cite me chapter and verse of Judge Bybee's opinion, I've got that. And now you're going to tell me what about McCutcheon that validates the idea that Edelman is still the law of the circuit? Because Edelman used the broader definition of corruption that was in shrink, which says not only quid pro quo, but also the effect that contributions may have a legislator too compliant with the wishes of the donor. That too compliant part is what Citizens United and then McCutcheon expressly disclaimed. But that issue was not taken up nor decided by the district court, was it? Yeah, because it hadn't been handed down. McCutcheon had not been handed down. Is it your position that this case should be remanded for that determination? No, because I think it's a question of law. The state has had two bites at this apple to present evidence of corruption. All they can come up with are these very vague influence type standards. And if you look at the district court in Edelman, they're very clear about this. And in fact, in five different portions of the district court opinion, they talk, the district court talks about, quote, undue influence of special interests, end of quote. For instance, because PAC contributions are limited to 30%. And that therefore limits the influence, undue influence of PACs. Well, that has nothing to do with quid pro quo corruption. And then the... Pardon me, Mr. Bopp. Answer this question and see if I follow you correctly. Sure. The district court used the shrink standard. In both Edelman and in Laird. To determine whether there was a compelling state interest. Yes. Your position is that along comes Citizen United and McCutcheon, which abrogates that interest upon which the district court relied. Yes. The district court never made a finding that there was or was not sufficient evidence to justify a corruption. Improperly defined. That's correct. So that being so, shouldn't the case go back to the district court to determine whether Citizens United, McCutcheon standard of corruption exists in this case? Well, I think it's within your discretion, the answer to that question. But within discretion means we have the power to do so. But should we do so? Yeah. And I say you can, but I say you shouldn't. It's not necessary. Why shouldn't we? Because we already have two developed records that you. But Montana and the court were looking at, the district court, were looking at a different standard and applying it. If they were wrong about the standard, shouldn't they have a chance to prove that the right standard also existed? There was never any question that corruption had to be proven by the state. Because they were using the shrink standard. They didn't have to prove corruption. Now they have to prove corruption. So now should we have a chance to? Don't you think it's improbable that they withheld evidence of quid pro quo corruption? They withheld it? It might be more difficult to prove quid pro quo corruption. But it doesn't exist. And they have two shots at the apple. And we have the. But they weren't shooting at that apple. Well, they were shooting at the corruption. And that corruption definition in shrink did have both parts. It was quid pro quo plus to compliant. So both parts were there. Okay. So that was the standard being applied in Edelman. Both parts. The only parts that they were able to prove was the second part. That is to compliant. And we know that because. Because the district court opinion says that specifically. It cites the evidence of various aspects of the evidence. And says this shows undue influence by special interest. All right. Not quid pro quo corruption. Because the district court knew that he could. That was the lower threshold. Right. And therefore he didn't go on to say. And if it were correct quid pro quo. They also show it in these manners. Well, there weren't any such instances. Well, how do we know that? Well, because we have the record. And you're not supposed to go evaluate the record. As if we're the district court. Now evaluating what the trial evidence shows. And may reach our conclusion. It would not meet a quid pro quo. In first amendment. You are obligated to do an independent examination of the record. So that is not an unusual record job. Yeah. Okay. Okay. And if there would have been quid pro quo evidence. Then the district court would have cited it. Because that was corruption. Your position is that the record as it stands. Should be reviewed by this court. And the record as it stands. Shows no evidence of quid pro quo corruption. Upon which a reasonable finder of fact could find. That's exactly right. But in first amendment cases. You're obligated to do that anyway. You're obligated to take an independent review of the evidence. To make sure that the first amendment protections have been afforded. In this case. It's a special. It's not. It's unusual. Other cases. No. In first amendment. Yes. What about the citation by your learned friend. That a thousand dollars can indicate corruption. She. That's not what she said. In all due respect. She said that. Testified that a $1,000 contribution. Have shown no risk of corruption in Montana. In fact. In her 11 years of working at the office of political practices. She knew of no candidate that could be corrupted. By a contribution of $2,500 or less. And remember. The prior limits. Before these low limits were adopted. Was a thousand dollars. And in fact. Candidates are still running in Montana. Under the federal limits. Of 25. 26. Now $2,700. So if there were people that. In Montana. Politicians. That could be corrupted by contributions. Up to $2,600. Well. They're tested. Because if they run for federal office. They can get a contribution that high. So then. And these amounts are wildly. Larger than the. Than the amounts. That the current limits. Are that apply. Now there's two other ways that. Edelman is wrong. Second. Second way. Is that there's a dramatic effect. On fundraising. Dramatically adverse effect. On fundraising. By candidates under these new limits. Edelman was wrong here. Because they looked at all races. And said that in all races. Only 10%. Deduction. However. Randall. Said specifically. That it's not all races. The evidence should. That is pertinent. And probative. Is evidence in competitive races. And in Randall versus Sorrell. That evidence showed. Between 15 and 53%. Reduction in funds available. That is. The amount that was rejected. In Edelman. As making any. Probative value. Which was 24 to 30%. And of course. In this. We are now at. At. If you just increase contribution limits. By double up to 320. 26% are. Reduction in funds. And if we went up to 1000. You know. It'd be wildly. More than that amount. So we have a dramatic adverse effect. On fundraising. That's proven. In Edelman. But not. Given the way. That. That Randall versus Sorrell. Would give it. And. And further demonstrated. That things have changed. Such. That now. Even more money is being denied. To candidates. And finally. The. There's a specific finding. By the layered court. That. Candidates cannot raise sufficient funds. To run an effective campaign. That's based on testimony of a. Wide. Wide variety of people. Regarding specific races. It's testimony about. The effect of inflation. And also overall statistics. That the. That demonstrate the substantial reduction. In funds. That finding. If. I understand. Is. You can over. Only overturn that finding. If it's clear air. And. In first amendment cases. And. That certainly is not. So. May I defer to my colleague. Good morning. Your honors. May please the court. My name is Matthew Monforton. I represent the interveners in this matter. My client Rick Hill is present in court today. I know my time is short. So I will be brief. Montana's political party contribution limits are unconstitutional. We make that argument. Recognizing that Colorado too. Upheld party contribution limits. With regard to federal candidates. However Montana's. Political party contribution limits are significantly different. Than those that were analyzed in Colorado too. Number one Montana. Montana's political party limits are grossly under inclusive. In a way that the federal political party limits were not. Montana claims that the political party contribution limits. Deter circumvention of individual contribution limits. However the contributors in Montana. Are allowed under Montana law and Montana practice. To pay for the personal services of candidates. That is an exception that the state acknowledged in their reply brief. Is significant. And in reality it's more than significant. It's unlimited for all practical purposes. There are no monetary limits. To how much a wealthy donor or political committee. Can pay in terms of the personal services of that are rendered to a candidate. Can you explain why this is the right time. To adjudicate in your client's behalf. Since we don't know whether Montana is going to pursue. Anything against Mr. Hill. Yes your honor. We do know that insofar as a complaint. Was filed with the commissioner of political practices. And the commissioner of political practices. Rather than dismissing that complaint outright. As he has discretion to do instead. Has not dismissed it and is maintaining an investigation. Now that investigation has been stayed. Pending proceedings in federal court. But there has been no indication by the state of Montana. Despite a considerable amount of litigation. That has taken place. That they intend to not proceed against Mr. Hill. And under the standard announced in Holder versus humanitarian law project. The fact that the government has not made any kind of statement. Or any kind of suggestion even. That they are not going to proceed against my client. My client therefore has standing to bring these claims. And the under inclusiveness argument. That we are bringing is something that can be resolved now. Because it is a pure issue of law. And our evidence is based on. Largely the testimony by the by the state's witnesses. About this personal services exemption. It's so large it nearly swallows up. Explain to me why the personal exemption exception affects you. Because Mr. Hill is accused of violating the political party. Contribution limits by accepting a $500,000 contribution. Our argument is that political party contribution limit is unconstitutional. Because it is under inclusive. There is such a huge exception to that law. The law really has no practical. Individual donors can shovel $500,000 to pay for jets and consultants. And TV time services that are given to a candidate. And that's not a violation of Montana law. But if they give it to the Republican party. The Republican party gives it to Mr. Hill. That is a violation. Exactly. Exactly. Inclusiveness argument. Exactly your honor. You say you you have standing. Mr. Hill had a case below. And I guess he decided not to pursue it on. Up here or got what happened below. Because then it looks like he intervened up here. Is that right? Your honor we intervened here first. And then we brought a separate action. In district court subsequent to our intervention here. And the reason we did that. Was we we wanted to raise an argument. In the district court. Specifically that that Rick Hill. Had relied on an injunction. That had been validly issued by the district court judge. And then six days later that injunction had been dissolved. And it is our contention. That the whole purpose of first amendment. Related injunctions in election cases. Is to allow citizens to exercise their free speech rights. Prior to election day. If it is the case. That citizens can be subsequently punished. If those injunctions are found to not survive scrutiny. On appellate review. Then the whole value of those injunctions would. They would have no value. Because people would not be able to rely on them. And that's the argument that we made to the district court. The district court said that. That we it was premature to resolve that. Because the ninth circuit was still determining. Whether judge levels initial order was valid or not. So that that's really the situation that we're in. Is that if this if this court were to reverse level. Which obviously we're not arguing that it should. But if that were to happen. Then the Montana political commissioners. Commissioner political practices would then be free. To proceed against Rick Hill. And that's exactly what he has made clear. That he intends to do. That's the dilemma that we're in. Is that it we would like. We believe that this court has authority. To resolve the issue that we presented. And that is may a citizen rely on an injunction. Engage in the kind of speech that that injunction permits. And then can that citizen then be penalized subsequently. If that injunction is later found to be. To have been improperly granted. We think this is a clear issue. It involves pure law. It does not involve any factual. Findings that need to be made by the district court. We believe that that can be decided now. And what kind of penalty is the Montana commissioner. Seeking against Mr. Hill. Well under under Montana law. Because there is a supposedly illegal $500,000 contribution. The penalty can be triple triple damages. So Mr. Hill is looking at potentially. A million and a half dollars in penalties. For undertaking an action. That a federal judge in Montana said that he could do. Mr. Hill lost the election in 2012. All this depends on whether they decide to proceed. I'm sorry. All this depends on whether they decide. Correct your honor. So why is it. Why is it right. Everything's happened. It's it's ripe your honor. Because the they have already proceeded. With an investigation. They haven't done anything. They haven't charged him. With anything. They filed a complaint. And so that is. Puts him on notice in some risk. But it's all done. So we don't know in light of what happens in our opinion. Whether they'll pursue it or not. We think under under Holder versus humanitarian law project. The fact that they have not declined. To proceed against him is sufficient to give us standing. And sufficient to make this right. I'm talking about rightness. Yeah okay. One thing is standing. One thing is whether you have a claim for relief. Yeah understood your honor. And our position is is that is that Rick Hill is. He's done with politics. He lost the 2012 election. He and Betty want to get on with their lives. But but but they can't. With this million dollar million and a half dollar potential exposure. Hanging over them. And we have to decide whether it's ripe enough. For us to make a broad pronouncement. Decision on the merits. When the state may decide to not proceed. Anyway I think we have the issue. I understand your honor. There are no further questions from the from the panel. We will submit at this time. Thank you. Thank you. Thank you. Your honor thanks for the. Thank you for the one extra minute for a rebuttal. One one comment about the ripeness point that was just brought up. Is that a district court has already determined this isn't ripe. And they had the opportunity to appeal that. And they dismissed that appeal. So it's it's doubly unripe here. Say that again slowly. Your voice tends to to tail off. I'm sorry a district court has already determined that that Mr. Hill's. Arguments are not ripe. And they filed a notice of appeal with this court. And then that appeal was dismissed. So to be arguing about it here. It's it's it's doubly unripe. And it's it's not properly before this court. Turning to the the question of corruption. And what that means with the with the change in the quid pro quo. This court can exercise de novo review to a question of law. So our position is that that if this court looks independently. It looks at the facts that have already been found. The facts that were in Edelman. Regarding the corruption there. The facts that were presented in testimony below. By Mary Baker and other witnesses. If this court looks to those facts. And finds quid pro quo corruption. It can apply it under the de novo review. To the law as it stands. And it can reverse the district court. And vacate the injunction. If this court looks at the facts in Edelman. And the facts presented below. And does not find evidence of quid pro quo. Corruption. Then the state of Montana would ask this court to remand it. So that we can have a factual hearing. And address the record. And build a record that that narrows in on. How do you meet Mr. Bopp's arguments? That you had that opportunity already. And to present quid pro quo corruption evidence. And why should we give you a second bite at the apple? Well as you said your honor. It's a different apple. If we if we go down that road. And if the definition has been narrowed. Using the shrink test. And not and not citizens united test. That's correct. Okay thank you your honors. All right thank you very much for a very interesting argument. Court compliments both counsel. All three counsel. And the case will be marked as submitted.
judges: Fisher, Bea, Murguia